**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**ROBERT H. ROBINSON, JR.**
**JUDGE**

**Sussex County Courthouse**
**1 The Circle, Suite 2**
**Georgetown, DE 19947**
**Telephone: (302) 856-5264**

Submitted: November 10, 2022
Decided: November 16, 2022

Robert C. McDonald, Esquire
Silverman McDonald & Friedman
1010 N. Bancroft Parkway, Suite 22
Wilmington, DE 19805
Attorney for Plaintiffs

Kenneth M. Doss, Esquire
Daniella C. Spitelli-Sarnecky, Esquire
Casarino Christman Shalk Ransom &
Doss, P.A.
1007 N. Orange Street, Suite 1100
Wilmington, DE 19899
Attorneys for Defendant

Re:     *Jennifer Zadnik-Snider & Aaron Snider v. Kathleen A. Kelly*
        C.A. No.: S20C-01-017 RHR

Dear Counsel:

Pending before the court is Defendant, Kathleen A. Kelly's ("Kathleen)[1],

Motion for Summary Judgment. For the following reasons, Kathleen's Motion is

**GRANTED.**

---

[1] I refer to individuals using their first names because several individuals share a last name. I intend no familiarity or disrespect.

## I. Background

Kathleen, at all times relevant, owned a single-family home located at 38 Ronzetti Avenue, Selbyville, Delaware 19975, which she used as a rental property (the "Rental Property").[2] Plaintiffs, Jennifer Zadnik-Snider ("Jennifer") and Aaron Snider ("Aaron") (together, "Plaintiffs"), are married and they reside in Ocean City, Maryland.[3]

On or about May 20, 2018, Jennifer, a potential renter, met Kathleen at the Rental Property to tour the home and determine if it would accommodate her family.[4] During the tour, Jennifer inquired whether the home had an attic, which it did.[5] The two then went into the small bedroom located on the second floor that houses an enclosure in the ceiling that leads to the attic.[6] Kathleen pulled down the pull string suspended from a board connected to a stair system, which then caused the stairs to unfold down from the ceiling.[7] Kathleen proceeded to walk up the stairs

---

[2] Compl. ¶ 4 (D.I. 1).
[3] *Id.* ¶ 1.
[4] *Id.* ¶ 3.
[5] Def. Kathleen A. Kelly's Mot. for Summ. J., Ex. B at 68:23-69-10 (hereinafter "J. Zadnik-Snider Dep.").
[6] *Id.*
[7] *Id.* at 68:23-71:2.

into the attic, turned on the light, and descended the stairs.[8] As Jennifer ascended the stairs, the system broke loose from the ceiling, and Jennifer fell to the floor.[9]

After the complaint was filed, Jennifer, Aaron, Jennifer's son, Joseph Zadnik ("Joseph"), Kathleen, and Kathleen's son, Tyler Kelly ("Tyler") were deposed. Jennifer testified that she did not observe anything wrong with the stairs and that they did not give rise to concern when Kathleen had gone up them just moments prior to the accident.[10] Jennifer also stated that, immediately following the accident, Kathleen expressed shock that the staircase fell, apologized to Jennifer for what happened, and stated that she had no idea how it could have occurred.[11] When asked whether Kathleen knew or should have known of the condition of the stairs, Jennifer responded that she did not have any information to infer that Kathleen knew anything about the installation being defective and opined that had Kathleen known of the condition, she would not have let Jennifer use the stairs.[12] While Jennifer testified that she recalled Kathleen mentioning another couple who had recently divorced were the tenants prior to the vacancy, Jennifer stated that nothing she observed

---

[8] J. Zadnik-Snider Dep. at 68:23-69:10; *see also* Def. Kathleen A. Kelly's Mot. for Summ. J., Ex. D at 5:24-6:16 (hereinafter "K. Kelly Dep.").

[9] Whether actual injury occurred is undisputed. J. Zadnik-Snider Dep. at 68:23-69:10; *see also* K. Kelly Dep. at 5:24-6:16.

[10] J. Zadnik-Snider Dep. at 77:20-78:19, 83:8-84:10.

[11] Jennifer also recalls Kathleen saying that she had used the stairs many times and nothing of concern ever happened. *Id.* at 91:22-92:15.

[12] *Id.* at 111:7-112:3.

suggested any alterations had been made.[13]

Following the accident, Jennifer remained interested in renting the Rental Property and she brought Joseph and Aaron back later the same evening so they could see the house for themselves.[14] Joseph and Aaron both recalled going into the room where Jennifer had fallen and observed the staircase lying on the floor and the hole which remained in the ceiling where the stair system was once attached.[15] They also testified that Aaron opined (while at the Rental Property) that there were not enough screws to hold the stair system in place and that the screws seemed to be smaller than what would be necessary to support the system.[16] However, Aaron acknowledged that he is not a carpenter and does not have specialized knowledge to form an opinion as to the proper number or size of the screws used to attach the stair system.[17] They also both recollected that Kathleen made a generalized statement about a "nasty divorce" and an "ex-husband [who] may have booby-trapped [the stair system]."[18] When asked about whether Kathleen knew for certain or had reason

---

[13] *Id.* at 73:13-74:4, 106:15-107:3.

[14] *Id.* at 94:22-95:7.

[15] Def. Kathleen A. Kelly's Mot. for Summ. J., Ex. F (hereinafter "Joseph Snider Dep.") at 15:5-24; Pls.' Am. Opp'n to Def.'s Mot. for Summ. J., Ex. B (hereinafter "A. Snider Dep.") at 33:4-20, 43:19-44:2.

[16] Joseph Snider Dep. at 19:21-23; A. Snider Dep. at 36:17-20.

[17] A. Snider Dep. at 42:18-43:13.

[18] The record is unclear as to whether the allegation is that Kathleen's ex-husband may have tampered with the attic following their divorce, or if a previous tenant's husband may have tampered with it after their divorce. Joseph Snider Dep. at 21:13-22:17; A. Snider Dep. at 35:6-8. *See also* J. Zadnik-Snider Dep. at 73:9-22.

to believe that the accident could have happened, Aaron and Joseph both responded in the negative, stating Kathleen was "shocked" when this occurred and "that she had no reason to believe that anything like [the accident] would have happened…."[19] Aaron went so far as to say in his deposition that "[Kathleen] was going off of maybe what could have happened that would have led to [the accident]" and not acknowledging that she knew of any potential problems before the accident.[20]

Kathleen and Tyler also testified consistently that they were not aware of any preexisting issues with the stair system and that they had not made any changes to the system.[21] Kathleen stated that she had used the stair system in the past, but it never caused her any problems.[22] She was also unaware of any tenants having issues with the system prior to the accident.[23]

II. The Motion for Summary Judgment

In their complaint, Jennifer alleges that her injuries were proximately caused by Kathleen's negligence, and Aaron claims the injuries Jennifer sustained has caused the loss of consortium. On August 10, 2022, Kathleen filed the pending motion for summary judgment. Kathleen argues that Jennifer and Aaron fail to

---

[19] Joseph Snider Dep. at 22:17-23:14; *see also* A. Snider Dep. at 46:19-47:7.
[20] Joseph Snider Dep. at 22:18-23:8.
[21] K. Kelly Dep. at 16:22-17:23, 18:4-20:4; Def.'s MSJ, Ex. E (hereinafter "T. Kelly Dep.") at 6:19-22, 9:10-10:11.
[22] K. Kelly Dep. at 18:4-9.
[23] *Id.* at 19:9-13.

provide evidence to support their claim that Kathleen breached the duty of care she owed to Jennifer and Aaron.

Kathleen argues that the mere fact Jennifer was injured when the stairs collapsed is not enough to show breach of duty. Kathleen also maintains that Plaintiffs' failure to produce an expert witness to opine on why the access stairs collapsed and to whom fault is attributable also supports granting the motion because both issues require specialized knowledge beyond that of a lay juror under Delaware Rules of Evidence Rule 702.

Plaintiffs argue that the stairway used was in plain view and easily accessible for reasonable inspection. Jennifer and Aaron contend that the comments made by Kathleen about the possibility of someone tampering with the attic stairs called for an inspection of the system before allowing Jennifer to climb the stairway. Additionally, Plaintiffs argue that expert testimony is only required when a complex or technical issue is beyond the normal understanding of a lay jury and that such is not the case here.

## A. Standard of Review

When considering a motion for summary judgment, the court's role is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[24] Summary judgment may be granted only if, when

---

[24] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of fact and the moving party is entitled to relief as a matter of law.[25] Summary judgment will not be granted when it appears a more thorough inquiry into the facts is necessary in order to establish a clear application of the law to the case.[26] The burden is on the defendant to provide support negating the plaintiff's claim that material issues of fact exist.[27] If the defendant's motion is "supported by such a showing, the burden will shift to a non-moving party to demonstrate that there are material issues of fact."[28] In order to survive summary judgment, the plaintiff's claim must be supported by more than mere speculation and the court "must decline to draw an inference for the non-moving party if the record is devoid of facts upon which the inference reasonably can be based."[29]

B. Discussion

I find after a thorough review of the briefings, full consideration of the record, and oral argument, that there is no genuine issue of material fact and that Kathleen is entitled to relief as a matter of law. While it is clear that Jennifer sustained injuries from her fall at Kathleen's Rental Property on May 20, 2018, only speculation or

---

[25] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979); Super. Ct. Civ. R. 56.
[26] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[27] *Id.*
[28] *Moore*, 405 A.2d at 680-81 (internal quotation marks omitted).
[29] *Pazuniak Law Off., LLC v. PI-Net Int'l, Inc.*, 2016 WL 3916281 at *2 (Del. Super. July 7, 2016) (citing *In re Asbestos Litig.*, CIV.A. 01C-11-239, 2007 WL 1651968 at *16 (Del. Super. May 31, 2007) (No inferences can "be based on surmise, speculation, conjecture, or guess, or on imagination or supposition.").

conjecture support an inference that Kathleen was aware of—or should have been aware of—any defect in the stair system. Moreover, the record is devoid of any evidence that suggests that, even if Kathleen had seen a defect, she would have recognized the danger based upon her knowledge and experience.[30]

The Restatement (Second) of Torts § 343 sets forth the law establishing liability of a property owner adopted by Delaware courts.[31] Liability is imposed upon an occupier of property for the physical harm caused to a business invitee by a condition on the land if (i) he knew of it or (ii) if by the exercise of reasonable care, he would have discovered the condition and, realizing that it involved an unreasonable risk of harm to the business invitee, failed to provide adequate warning.[32]

In *Hamm v. Ramunno*,[33] the Court addressed whether the landowner was liable for the injuries caused by a latent defect. The analysis centered around the following question: "whether or not the landowner should have known by reasonable care of the latent defect which caused the injury."[34] The defendant owned a house

---

[30] *See Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971) (holding that liability was not imposed on an occupier of land where the defendant did not know of the condition which caused the plaintiff's injury, there was no reasonable way in which he could have found the existence of the condition and, even if the defendant could have seen the defect, the matter required expert knowledge which the defendant did not have).

[31] *Id. See* Restatement (Second) of Torts § 343(1965).

[32] *Hamm*, 281 A.2d 601, 603 (Del. 1971).

[33] 281 A.2d 601 (Del. 1971).

[34] *Id.* at 603.

8

and hired the plaintiff, a carpenter experienced in light carpentry, to complete a renovation project.[35] Before hiring the plaintiff, the defendant had personally made structural changes to the particular room where the plaintiff sustained injuries.[36] One of the project's requirements was to remove the ceiling beam which was previously at the juncture of the ceiling and the rear wall of the subject room.[37] When the plaintiff began working on the wall and cut down the few remaining studs, the ceiling beam collapsed and injured the plaintiff.[38] "Neither the plaintiff and his assistant nor the defendant realized that the ceiling joists were not fastened to the roof rafters; nor could this fact have been ascertained without demolition work to permit the examination of any connection between the ceiling joists and the roof rafters."[39] Ultimately, the Court decided that there was no breach by the defendant of his duty to warn the plaintiff because the facts made clear that: (i) "the defendant did not know of the condition which caused the plaintiff's injury," and (ii) "that there was no reasonable way in which he could have found the existence of the condition."[40]

---

[35] *Id.* at 602.

[36] The defendant removed two sidewalls and a substantial portion of the room's rear wall. He also installed temporary two-by-four supports extending from the floor level up to the roof rafters, but they did not support the ceiling beam. *Id.*

[37] *Id.*

[38] It took only two to five minutes from the time plaintiff cut the remaining studs from the rear wall and began prying the ceiling beam out of the plaster for the beam and the plaster ceiling to collapse. *Id.*

[39] Neither the plaintiff nor the defendant did any additional work to determine the condition of the ceiling prior to the plaintiff beginning their work. *Id.* at 603.

[40] *Id.* at 603.

The *Hamm* Court also held that defendant could not be liable for plaintiff's injuries because, had the defendant actually seen any defect, he would not have known or recognized the danger of its existence.[41]

I find that the facts and ruling in *Hamm* are applicable here. Jennifer, Aaron, and Joseph agree that Kathleen was confounded that the stair system collapsed. Kathleen and Tyler both testified that they never had any issues with the stair system and that Kathleen had used the stairs in the past with no issues. Immediately prior to the accident, Kathleen ascended the stairs to turn on the attic lights for Jennifer, and both Jennifer and Kathleen testified that nothing about the stair system seemed abnormal or gave cause for concern. Moreover, Katheen stated none of her prior tenants ever reported issues with the stair system. Even in *Hamm*, where the defendant knew of the alterations made to the room before the plaintiff began his work, the Court upheld the lower court's decision to grant the directed verdict in the defendant's favor. Because there was no reasonable way the defendant would have known of the unreasonable condition and, even with reasonable inspection, would not have appreciated the latent defect, there was no breach of the requisite duty of care. Such is true in the present case.

With regard to Kathleen's alleged opinion that someone tampered with the stair system, I do not find this off-hand comment sufficient to submit the case to a

---

[41] *Id.* at 604.

jury. Aaron, Joseph, and Jennifer recall Kathleen making a comment to this effect; however, none of their recollections are entirely consistent. The record contains no evidence that Kathleen should have been on notice of any defect and warned Jennifer before she climbed the stairs. There is no evidence that there were any other tampering incidents at the Rental Property. There is also nothing to suggest that even if Kathleen had taken further steps to inspect the stair system, she would have discovered the latent defect and would have provided Jennifer with an adequate warning. Notably, Kathleen ascended the stairs just moments prior to Jennifer without issue. Kathleen also testified that the home had been inspected annually, because inspections were required to rent the property, and no issue with the stair system was ever flagged. Kathleen stated that when she had the stair system replaced after the accident, her maintenance man told her there did not seem to be any issues with the screws that were used to fasten the system into the ceiling. In sum, I conclude the mere statement that the stair system might have been tampered with, standing alone, is not enough for me to make a reasonable inference that Kathleen should have been aware of the defect and should have provided Jennifer an adequate warning.

III. Conclusion

I find, as a matter of law, Jennifer cannot meet her burden of proof that Kathleen breached her requisite duty of care. Therefore, it is unnecessary to address

11

the parties' arguments as it relates to the need to produce expert testimony. In the same vein, the claim for loss of consortium need not be discussed. Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Sincerely,

/s/Robert H. Robinson, Jr.
Judge

cc:     All counsel of record (by File & ServeXpress)